**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

```
-----------------------------x
                             :
JACQUELINE DUNCAN            :
                             :
v.                           : Civil No. 1:18CV00063 (HBF)
                             :
NANCY A. BERRYHILL, ACTING   :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :
                             :
-----------------------------x
```

<u>**RULING ON CROSS MOTIONS**</u>

Plaintiff Jacqueline Duncan brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under Title II Social Security, 42 U.S.C. §401 <u>et seq</u>. ("the Act"). Plaintiff has moved to reverse or remand the case for a rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Judgment on the Pleadings **[Doc. #11]** is **DENIED.** Defendant's Motion for Judgment on the Pleadings **[Doc. #13]** is **GRANTED.**

**I. ADMINISTRATIVE PROCEEDINGS**

The procedural history of this case is not disputed. Plaintiff filed an application for DIB on April 26, 2010, alleging disability as of June 28, 2006.[1] [Certified Transcript

---

[1] Plaintiff's date last insured for Title II benefits is December

of the Record, Compiled on April 12, 2018, Doc. #8 (hereinafter "Tr.") 82, 193-99, 707]. Plaintiff alleged disability due to "back injury." [Tr. 82]. After the claim was denied initially on June 28, 2010, she filed no further appeal. [Tr. 65-68, 707].

Plaintiff filed a new application on October 4, 2012, alleging disability beginning in November 2006. [Tr. 215-218].

Her DIB claim was denied on December 17, 2012. [Tr. 158-61]. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on December 26, 2012. [Tr. 167-143].

On February 28, 2014, Administrative Law Judge ("ALJ") Marilyn Zahm held a hearing, at which plaintiff appeared with an attorney and testified. [Tr. 92-144]. A vocational expert, Darren Chief Flamberg, testified at the hearing. [Tr. 116-144]. On September 15, 2014, the ALJ found that plaintiff was not disabled, and denied her claim. [Tr. 14-32]. Plaintiff filed a timely request for review on October 15, 2014. [Tr. 13]. On November 25, 2015, the Appeals Council denied review, thereby rendering ALJ Zahm's decision the final decision of the Commissioner. [Tr. 1-3].

Plaintiff appealed to the District Court for the Western District of New York. [Tr. 762-63]. A Stipulation and Order for

---

31, 2011. [Tr. 710].

Remand entered on August 15, 2016, remanding the case to the
Commissioner for further administrative review. [Tr. 795-98;
799-803].

On November 23, 2016, the Appeals Council vacated the
hearing decision and remanded the case to ALJ Zahm. [Tr. 801-
02]. The Appeals Council found that the

Unfavorable hearing decision dated September 15, 2014,
found that the claimant's severe impairments (Finding
No. 3) resulted in an ability to perform a range of
light work (Finding No. 5) and that the claimant could
not perform her past relevant work as a kitchen
supervisor and food service manager (Finding No. 6).
Further, with vocational expert evidence, it was
determined that the claimant acquired food cooking and
preparing skills, numerical record keeping and
knowledge of meal services, and that she was not
disabled because she could perform other work,
including work as a cafeteria manager, food order
expeditor and food service supervisor (Finding No. 9).
However, the record includes a limited description of
the requirements of the claimant's past relevant work
in a Work History Report dated June 10, 2010 (Exhibit
6E); the claimant did not provide greater details of
the requirements of her past relevant work at the
hearing held on February 28, 2014. Therefore, it is
unclear whether the claimant derived the transferable
skills identified by the vocational expert (Social
Security Ruling 82-41).

On remand, the Appeals Council stated that the ALJ "will":

- Give further consideration to the transferable skills
  acquired from the claimant's past relevant work. In so
  doing, obtain supplemental evidence from a vocational
  expert to determine the claimant's transferable skills and
  whether the claimant has acquired any skills that are
  transferable with very little, if any, vocational
  adjustment to other occupations under the guidelines in
  Social Security Ruling 82-41. The hypothetical questions
  should reflect the specific capacity/limitations

3

established by the records as a whole. The Administrative
Law Judge will ask the vocational expert to identify
examples of such appropriate jobs and to state the
incidence of such jobs in the national economy (20 C.F.R.
404.1566). Further, before relying on the vocational
expert evidence the Administrative Law Judge will identify
and resolve any conflicts between the occupational
evidence provided by the vocational expert and information
in the Dictionary of Occupational Title (DOT) and its
companion publication, the Selected Characteristics of
Occupations (Social Security Ruling 00-4p).

[Tr. 801-02].

On July 31, 2017, a second hearing was conducted by ALJ
Zahm, at which Ms. Duncan appeared with an attorney and
testified. [Tr. 2072-89]. VE Lanell Hall also testified at the
hearing. [Tr. 2075-88]. On November 2, 2017, the ALJ found that
plaintiff was not disabled, and denied her claim. [Tr. 704-22].
This became the final decision when no written exceptions were
filed; the Appeals Council did not review the decision on its
own; and 60 days expired since the date of the decision. The
case is now ripe for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action
for review and moves to reverse and/or remand the Commissioner's
decision.

## II.  STANDARD OF REVIEW

The review of a social security disability determination
involves two levels of inquiry. First, the Court must decide
whether the Commissioner applied the correct legal principles in
making the determination. Second, the Court must decide whether

4

the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set

forth with sufficient specificity to enable [a reviewing court]

to decide whether the determination is supported by substantial

evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)

(alteration added) (citation omitted). The ALJ is free to accept

or reject the testimony of any witness, but a "finding that the

witness is not credible must nevertheless be set forth with

sufficient specificity to permit intelligible plenary review of

the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255,

260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a

finding is potentially dispositive on the issue of disability,

there must be enough discussion to enable a reviewing court to

determine whether substantial evidence exists to support that

finding." Johnston v. Colvin, Civil Action No. 3:13-CV-

00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014)

(internal citations omitted).

It is important to note that in reviewing the ALJ's

decision, this Court's role is not to start from scratch. "In

reviewing a final decision of the SSA, this Court is limited to

determining whether the SSA's conclusions were supported by

substantial evidence in the record and were based on a correct

legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir.

2012) (citations and internal quotation marks omitted).

"[W]hether there is substantial evidence supporting the

appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Ms. Duncan must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[ ] ... physical or mental ability to do basic work activities" to be considered "severe").[2]

---

[2] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

_____

seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from her physical and mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV. THE ALJ'S DECISION

Following the above-described five step evaluation process,

ALJ Zahm concluded that plaintiff was not disabled under the Social Security Act. [Tr. 704-22]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 16, 2006, the alleged onset date, through her date last insured, December 31, 2011. [Tr. 710].

At step two, the ALJ found that plaintiff had lumbar spine degenerative disc disease and herniated lumbar disc without myelopathy, all of which are severe impairments under the Act and regulations. [Tr. 710-11].

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (20 C.F.R. §§404.1520(d), 404.1525 and 404.1526). [Tr. 711]. The ALJ specifically considered Listing 1.04 (disorders of the spine). [Tr. 711].

Before moving on to step four, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform work that required no constant forward bending, stooping, reaching, twisting, crawling, and climbing;  no constant overhead activities; needs headset if answering the phone on a regular basis; no lifting anything greater than 20 pounds; no sitting, standing, or walking for more than two hours at a time; and the total workday should not exceed eight hours. [Tr. 712].

At step four, the ALJ found plaintiff was able to

perform her past relevant work as a dietary manager. [Tr. 720].

The ALJ concluded that plaintiff had not been under a disability from November 16, 2006, the alleged onset date of disability, through December 31, 2011, the date last insured. [Tr. 721].

## V.   DISCUSSION

### A.   The ALJ did not Err at Step Four

Plaintiff first argues that the ALJ's finding that she could perform her past relevant work at Step Four is unsupported by substantial evidence. [Doc. #11-1 at 22, Doc. #14].

At Step Four, the ALJ considers whether, based on the claimant's RFC, she is capable of performing her past relevant work. 20 C.F.R. §416.920(a)(4)(iv); see 20 C.F.R. §404.1520(a)(4)(iv). If the ALJ determines that the claimant can still do her past relevant work, the ALJ will find that the claimant is not disabled. Id. "The claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally. This inquiry requires separate evaluations of the previous job and the job as it is generally performed."[3] Jasinski v. Barnhart, 341

---

[3] The Dictionary of Occupational Titles ("DOT") is used to describe jobs "as they are generally performed," Jasinski, 341 F.3d at 185, and the Commissioner is permitted to take administrative notice of the DOT. Clark v. Colvin, No. 1:13-CV-

F.3d 182, 185 (2d Cir. 2003)(emphasis in original); see Social

Security Ruling ("SSR") 82-61, 1982 WL 31387, at *2 (S.S.A.

1982)("Under this test, if the claimant cannot perform the

excessive functional demands and/or job duties actually required

in the former job but can perform the functional demands and job

duties as generally required by employers throughout the

economy, the claimant should be found to be 'not disabled.'");

Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)("The

inquiry in Social Security benefits cases is not whether a

claimant is able to perform the duties of her previous job, but

whether the claimant is able to perform the duties associated

with her previous "type" of work.")(citing Jock v. Harris, 651

F.2d 133, 135 (2d Cir. 1981)). "Therefore, the ALJ is not

typically required  to find that the claimant can perform the

past relevant work as actually performed if he finds that the

clamant can perform the job as generally performed." Delgado v.

Berryhill, Civil Action No. 3:17-CV-54 (JCH), 2018 WL 1316198,

at *17 (D. Conn. Mar. 14, 2018).

The analysis is different in the context of composite jobs.

Id. "[C]omposite jobs have significant elements of two or more

---

01124 (MAT), 2016 WL 4804088, at *3 (W.D.N.Y. Sept. 13,
2016)(citing 20 C.F.R. § 404.1566(d)(1), 416.956(d)(1); see also
Petrie v. Astrue, 412 F. App'x. 401, 409-10 (2d Cir. 2011)).

occupations and, as such, have no counterpart in the DOT." SSR
82-61, 1982 WL 31387, at *2.

Here, at Step Four, the ALJ determined that Duncan was
capable of performing past relevant work as a Dietary Manager
and therefore was not disabled. [Tr. 720].

Plaintiff was born on May 1, 1951, and was sixty years old
on December 31, 2011, her date last insured, which is defined as
a person of advanced age (age 55 or older).[4] 20 C.F.R.
§404.1563(e); see 20 C.F.R. 404.1568(d)(4)(setting forth special
rules for persons of advanced age and for persons in this
category who are closely approaching retirement age (age 60 or
older)). [Tr. 193]. She left high school in the 10th grade. [Tr.
241].

Plaintiff's Evidence of Past Relevant Work

The claimant is the primary source for vocational
documentation, and statements by the claimant
regarding past work are generally sufficient for
determining the skill level; exertional demands and
nonexertional demands of such work. Determination of
the claimant's ability to do PRW requires a careful
appraisal of (1) the individual's statements as to
which past work requirements can no longer be met and
the reason(s) for his or her inability to meet those

---

[4] The date used to calculate a claimant's age differs when
applied to DIB under Title II of the Act and SSI under Title XVI
of the act. The date that should be used in DIB cases is the
date last insured, while the date applied in SSI cases is the
date of the ALJ's ruling. Woods v. Colvin, 218 F. Supp. 3d 204,
208 (W.D.N.Y. 2016)(citing Torres v. Comm'r of Soc. Sec., No.
14-CV-6438, 2015 WL 5444888, at *10 n.4 (W.D.N.Y. Sept. 15,
2015) and Koszuta v. Colvin, NO. 14-CV-694-JTC, 2016 WL 82445,
at *2 (W.D.N.Y. Mar. 3, 2016)).

> requirements; (2) medical evidence establishing how
> the impairment limits ability to meet the physical and
> mental requirements of the work; and (3) in some
> cases, supplementary or corroborative information from
> other sources such as employers, the Dictionary of
> Occupational Titles, etc., on the requirements of the
> work as generally performed in the economy.

SSR 82-62, 1982 WL 31386, at *3 (S.S.A. 1982)."In classifying

prior work, the agency must keep in mind that every occupation

involves various tasks that may require differing levels of

physical exertion. It is error for the ALJ to classify an

occupation according to the least demanding function." Costa v.

Comm'r of Soc. Sec., 525 F. App'x 640, 642 (9th Cir.

2013)(quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d

1155, 1166 (9th Cir. 2008) (internal quotation omitted) (finding

improper a classification of past relevant work based on 20% of

the duties performed)).

At the 2017 hearing, plaintiff testified that she worked

for Presbyterian Senior Care of Western New York from 1979

through 2006. [Tr. 887, 2077-86]. During her employment at the

nursing home, Duncan testified, she worked as a dietary aide,

dietary director and dietary supervisor.[5] [Tr. 265 (Work History

Report dated June 10, 2010), 2077-78, 2079]. The ALJ found that

these jobs qualified as past relevant work, as plaintiff

---

[5] Plaintiff testified that in 2004 or 2005 she returned to the
Dietary Supervisor job when the nursing home "merged the two
buildings together, and since I can't drive I became a
supervisor again." [Tr. 2077-78].

performed these jobs "within the fifteen year period preceding her date last insured, at the level of substantial gainful activity, and for long enough to learn the skills/duties of the job." [Tr. 721].

Plaintiff completed a Work History Report in June 2010, consisting of fill in the blank questions and check-off boxes. For example, she did not indicate whether she used any machines, tools, equipment, technical knowledge, or skills as a Dietary Supervisor but indicated by checking a box that she wrote reports/completed forms. Asked to describe the job and what she did all day, she wrote "Dietary Supervisor had to order[,] check tray line[, and] put away stock." [Tr. 266]. Plaintiff indicated by filling in a blank, that in performing her job as a Dietary Supervisor, she would walk and/or stand for 6 hours; sit for 45 minutes, climb 1 hour, stoop, kneel, crouch, handle, grab or grasp big objects for 3 hours each day. [Tr. 266]. With regard to lifting and carrying, she wrote that "[w]hen the big stock came in once a wk had to lift cs of frozen foods, cs of #10 fruits or veg to put on the shelves." [Tr. 266]. The heaviest weight lifted was 50 pounds. [Tr. 266]. She supervised 6 people throughout her work day and indicated by checking a box that she was the designated "lead worker" and was not responsible for hiring or firing employees. [Tr. 266]. Plaintiff left page two blank. [Tr. 267].

In the remarks section she wrote,

When I was a dietary director I overseen at least 15 employee a day. I did the ordering, displine the employee plus putting up stock. I work over 40 a wk. went to meeting. Make sure my budget wasn't over. As a supervisor I didn't have to do payrole or doing schudling the employee. Supervisor I had at least 20 patient that I had to go on the floors to do their menu for the wk and to make sure that they get it.

[Tr. 268 (sic)].

In December 2016, after the case was remanded, the ALJ requested additional information from plaintiff's employer about the work that she performed from 2001-2006. [Tr. 887-88]. The employer responded that plaintiff was employed from "8/30/1978-11/21/2006" and during that period worked as a cook "prepar[ing] meals for residents" and as a dietary supervisor "overseeing the dietary staff, ordering, etc." [Tr. 887]. The response did not indicate the dates when she held each job.

At the ALJ's hearing in 2017, plaintiff testified about her past relevant work, [Tr. 2077-81], stating that she started as a Dietary Aide in 1978 and became a Supervisor sometime in 1996-97, then a Director sometime in 1999-2000, and then returned to the supervisory position sometime in 2004-05. [Tr. 2077-78].

Her responsibilities as a Dietary Supervisor included, "I did a little ordering. I put stock away, disciplined the staff, do my tray lines. You know, make sure that everything was correct on the trays, and make sure that the cooks—everyone did what they supped to do during night time." [Tr. 2078]. She would

16

cook as needed, "[i]f someone called in." [Tr. 2078]. At the end or her employment, she was "just a supervisor, I was just like order like the vegetables, the milk, and maybe the bread. You know, little minor things then." [Tr. 2078]. She kept records and "lists like for like week one, week two, week three. I had everything to order though I knew what had to be ordered." [Tr. 2078-79]. In the time frame 2004-2005, when plaintiff returned to the supervisory position, she testified that she worked "really long hours...like 13 hours a day then, and I would go from one building and do what a supervisor did at one building, and then like at 2:30, 3:00, I would go to the next building and stay until quarter to eight...." [Tr. 2079-80]. "I wasn't ordering the big products anymore because it was the director that did that then." [Tr. 2080]. She put stock away and made sure all the trays were prepared for the patients and she would also cook if they needed coverage. {Tr. 2080-81]. Finally, as Supervisor she would provide input regarding hiring and firing staff but was not responsible for hiring and firing. [Tr. 2081].

As a Dietary Director, plaintiff testified that she was responsible for billing, ordering, disciplining all the staff plus the supervisors. [Tr. 2079]. "I still put away stock from time to time." Id.

Vocational Expert Testimony

At the 2017 hearing, Vocational Expert Lanell Hall

testified that in the 15 years prior to plaintiff's date last insured, plaintiff was a Dietary Aide, listed in the Dictionary of Occupational Titles ("DOT") at 319.677-014, medium, SVP 2, unskilled; Kitchen Supervisor, DOT 319.137-030, medium, SVP 7, skilled; Dietary Manager (Dietary Director), DOT 187.106-206, sedentary, SVP 8, skilled, "but performed at the medium exertion level;" and Cook, DOT 315.361-010, medium, SVP 6, skilled. [Tr. 2082]. The VE testified that plaintiff had transferable skills to light work as a Dietary Director/Manager, "directing and coordinating food service activities, coordinating the kitchen staff, inspecting food and food preparation, hiring and firing and general staff supervision, also inventory." [Tr. 2083].

The VE testified that plaintiff had transferable skills to light work, "specifically for the Dietary Manager" position. [Tr. 2083].

In the hypothetical provided to the VE at the 2017 hearing, which corresponded to the RFC, the ALJ restricted the claimant to no forward bending, stooping, reaching, twisting, crawling and climbing; no constant forward bending, stooping, reaching, twisting, crawling, and climbing; no constant overhead activities; able to use a headset if answering the phone on a regular basis; no lifting anything more than 20 pounds; no sitting, standing or walking for more than two hours at a time; and the total work day should not exceed eight hours. [Tr.

2084]. The ALJ asked the VE whether any of plaintiff's past relevant work could be done. [Tr. 2084]. The VE responded, that a "person could perform the job of dietary manager as generally performed and that would be all. All the rest of the jobs exceed the light exertion level." [Tr. 2085]. The VE added that the dietary manager job is a sedentary job as it's generally performed in the national economy. [Tr. 2085].

ALJ's Findings at Step Four

The ALJ found that "when comparing the claimant's residual functional capacity with the physical and mental demands of her work as a dietary manager, the undersigned finds that through her date last insured the claimant was able to perform that work as generally performed." [Tr. 721].

Plaintiff contends that the ALJ erred because "the evidence in the record establishes that plaintiff's past relevant work performed within fifteen years of the date of adjudication involved a combination of two different positions [Tr. 268 (citing 2010 Work History Report)] and the ALJ should have analyzed plaintiff's past relevant work as a composite job. Specifically, plaintiff argues that "the overwhelming evidence in the record indicates that Plaintiff previously performed a composite job, which included the functions of both a dietary manager and a dietary aide, as those occupations are defined in the DOT." [Doc. #11-1 at 19 (citing Tr. 83 (Disability Report-

Adult Section-Job History))].

This argument fails for several reasons. First, plaintiff cites to a Disability Report completed as part of her initial application for benefits to support her argument that she was employed as a Dietary Aide from 1978 through 2006 and performed these job duties throughout her employment at the nursing home. [Tr. 83]. However, as set forth in the Appeals Council's Order, this case was remanded because "the record include[d] a limited description of the requirements of the claimant's past relevant work in a Work History Report dated June 10, 2010 (Exhibit 6E), [and] the claimant did not provide greater details of the requirements of her past relevant work at the hearing held on February 28, 2014. [Tr. 801]. Second, plaintiff testified at the 2017 hearing that she worked in each position of Dietary Aide, Kitchen Supervisor and Dietary Manager for discrete periods of time. [Tr. 2078-81]. Third, plaintiff's past relevant work was classified by the VE as separate jobs with individual DOT listings and job descriptions. [Tr. 2082-85]. "SSR 82-61 states that 'composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT.' Where, as here, a VE testified that both jobs are individually listed in the DOT, 'they are not composite jobs.'" Clark, 2016 WL 4804088, at *4 (quoting Johnson v. Colvin, 2014 WL 1394365, *7 (W.D.N.Y. Apr. 9, 2014))(emphasis added). Last, the VE

testified that, given the RFC found by the ALJ, plaintiff could perform the functions of the Dietary Manager/Director job, as generally performed in the national economy. [Tr. 2085]; see Clark, 2016 WL 480488, at *4.

Defendant argues that plaintiff failed to meet her burden to prove that "she could not perform her past relevant work as a dietary manager as generally performed in the national economy." [Doc. #13-1 at 13]. The Court agrees.

The Court has carefully reviewed the testimony and evidence provided by plaintiff to support her argument that she worked a composite job, which included the functions of both a dietary manager and a dietary aide and finds that she did not meet her burden of proving that her job had "significant elements of two or more occupations and, as such, [had] no counterpart in the DOT." SSR 82-61, 1982 WL 31387, at *2; see Long v. Berryhill, 16-CV-760S, 2018 WL 618119, at *4 (W.D.N.Y. Jan. 30, 2018)("[W]hen significant variation exists between a claimant's description of her job and the DOT description of the job, it may be the result of a composite job.")(quoting Hams v. Carolyn, No. C13-2145-RAJ-BAT, 2014 WL 4168473, at *2 (W.D. Wash. Aug. 20, 2014)). As set forth above, the VE had no difficulty identifying a counterpart in the DOT for Dietary Manager based on plaintiff's description of her job functions.

The cases cited in support of plaintiff's argument are distinguishable on the facts. See West v. Berryhill, No. 4:16-CV-852-SPM, 2017 WL 4264126, at *6 (E.D. Mo. Sept. 26, 2017)("Because the vocational expert needed to point to multiple DOT occupations to describe the Humanitri job, it was a composite job."); Delgado, 2018 WL 1316198, at *19 ("While the record does appear to indicate that Delgado's past relevant work at La Quinta involved duties from two different occupations, the court here does not consider the record to contain sufficient information to determine whether Delgado's past work should appropriately be considered a composite job because of the limited information as to his duties. For example, no testimony was elicited concerning the frequency and duration of each type of duty Delgado performed, how central each duty was to his job, or the nature of the cleaning that he performed besides cleaning toilets and taking out garbage."); Morgan v. Berryhill, No. 2:16-CV-01052 JRC, 2017 WL 2628094, at *3 (W.D. Wash. June 19, 2017)("Plaintiff testified, and the VE acknowledged, that plaintiff's job duties included 'enter[ing] stuff into a computer part of the day; and answer[ing] phones, and [sending] clients to the officers that they needed to talk to; and then part of the day [working] ... in the mailroom stuffing envelopes and preparing them to be sent out to people.' [] It is very clear that plaintiff's work at DSHS was not solely as a 'Data

Entry Clerk' or 'Mailroom Clerk.' Rather, it appears that the only way that the "main duties" of this work can be described accurately is by considering two or more separate DOT occupations."); Shealy v. Colvin, Civil Action No. 8:13-2383-RMG, 2015 WL 467726, at *12 (D.S.C. Feb. 4, 2015)("The VE explained that, although Plaintiff performed job duties of an order clerk, she always performed them in conjunction with duties of a material handler and/or a store's laborer. And, the ALJ specifically found Plaintiff was not still capable of performing the "other duties" outside of order clerk duties, specifically referencing the VE's testimony that discussed the other duties as material handler and/or a store's laborer."); Lyda v. Colvin, 221 F. Supp. 3d 1254, 1258 (D. Colo. 2016)("At the hearing, the vocational expert classified plaintiff's past relevant work as "owner/manager nut processing," a skilled, medium occupation. [] However, based on plaintiff's testimony that he spent 50 to 75 percent of his day "[m]aking deals to buy the nuts and also making deals to ... my customers" [], the expert classified that aspect of the job as that of "product broker," a typically sedentary occupation []. When posed a hypothetical that essentially mimicked the ALJ's ultimate residual functional capacity assessment, the vocational expert testified that such restrictions would preclude the

owner/manager job as a whole, but not the product broker portion of the job.").

Plaintiff asserts that her past work cannot be separated into different jobs, but her description of her work at the 2017 haring demonstrates otherwise. As set forth above, plaintiff testified that she "started in 1978 as a dietary aide;" then "became a supervisor" in approximately 1996 or 1997; then "became a director" in approximately 1999 or 2000; then she "became a supervisor again" in "2004, 2005." [Tr. 2077-78]. Here, plaintiff clearly provided testimony regarding the discrete positions she held and the job duties associated with these positions. [Tr. 2078-81]. The Court agrees with the Commissioner that plaintiff "appears to confuse a composite job with how a job is generally performed in the national economy." [Doc. #13-1 at 13 (citing Noelle v. Comm'r of Soc. Sec., No. 5:15-CV-1302 (GTS/WBC), 2017 WL 9509957, at *7 (N.D.N.Y. Feb. 13, 2017)). Further, plaintiff and the VE "did not testify that plaintiff's past relevant work, as plaintiff actually performed it or as it was generally performed, was a composite job. Id. (citing Fody v. Colvin, 169 F. Supp. 3d 804, 810 (N.D. Ill. 2015)); Clark, 2016 WL 4804088, at *4 ("Where, as here, a VE testifies that both jobs are individually listed in the DOT, "they are not composite jobs."(quoting Johnson v. Colvin, No. 13-CV-6319-CJS, 2014 WL 1394365, *7 (W.D.N.Y. Apr. 9, 2014)).

Nor did plaintiff question the VE's testimony during the 2017 hearing or argue that her past work at the nursing home was a composite job. Id.

Accordingly, substantial evidence supported the ALJ's Step Four determination that plaintiff could perform her past relevant work as a Dietary Manager as it is performed in the national economy.

### B. Appeals Council's Remand Order

Plaintiff next claims that "[a]ccording to the Appeals Council's order remanding this matter back to ALJ Zahm, the ALJ was required to make specific findings pertaining to whether the Plaintiff had skills that are transferrable to other occupations, with a minimal amount of vocational adjustment." [Doc. #11-1 at 23]. She argues that the ALJ "failed to make the required findings in violation of the Appeals Council's Order, necessitating a remand of this case to the ALJ." Id.

The regulations clearly state that an "administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §404.977(b) (emphasis in original). The failure of an ALJ to abide by the directives in an Appeals Council remand order constitutes legal error requiring remand. Savino v. Astrue, No. 07-CV-4233 (DLI), 2009 WL 2045397, at *9 (E.D.N.Y. July 8, 2009)

(citing <u>Scott v. Barnhart</u>, 592 F. Supp. 2d 360, 371 (W.D.N.Y.

2009) ("The ALJ's failure to comply with the Appeals Council's

order constitutes legal error, and necessitates a

remand.")(citations omitted); <u>Mann v. Chater</u>, No. 95 CIV.

2997(SS), 1997 WL 363592, at *1–2 (S.D.N.Y. June 30, 1997)

(holding that the case must be remanded when the ALJ did not

follow the orders of the Appeals Council)).

The Appeals Council's Order states that upon remand the ALJ

will:

- Give further consideration to the transferable skills
  acquired from the claimant's past relevant work. In so
  doing, obtain supplemental evidence from a vocational
  expert to determine the claimant's transferable skills and
  whether the claimant has acquired any skills that are
  transferable with very little, if any, vocational
  adjustment to other occupations under the guidelines in
  Social Security Ruling 82-41. The hypothetical questions
  should reflect the specific capacity/limitations
  established by the records as a whole. The Administrative
  Law Judge will ask the vocational expert to identify
  examples of such appropriate jobs and to state the
  incidence of such jobs in the national economy (20 C.F.R.
  404.1566). Further, before relying on the vocational
  expert evidence the Administrative Law Judge will identify
  and resolve any conflicts between the occupational
  evidence provided by the vocational expert and information
  in the Dictionary of Occupational Title (DOT) and its
  companion publication, the Selected Characteristics of
  Occupations (Social Security Ruling 00-4p).

[Tr. 802].

At the 2017 hearing the ALJ specifically asked the VE

whether "the claimant [has] transferable skills to light work?"

and the VE responded "yes."[6] [Tr. 2083]. Duncan's attorney also inquired of the VE whether "there [were] any transferable skills from the claimant's past relevant work to the sedentary exertion level?" and the VE responded that the transferable skills previously testified to would be the same at the sedentary level. [Tr. 2085].

Defendant argues, and the Court agrees, that any error by the ALJ for not making "specific findings" in her 2017 ruling

---

[6]ALJ:

> Q. Okay. Does the claimant have transferable skills to light work?
> VE:
> A: Yes, Your Honor. These transferable skills specifically for the dietary manager, which would have been the director job, would have been directing and coordinating food service activities, coordinating the kitchen staff, inspecting food and food preparation, hiring and firing and general staff supervision, also inventory. Those would be the main transferable skills, Your Honor.
> ...
> Q: Okay. The director job, is the knowledge of meal services one of the transferable skills?
> A: Yes, Your Honor.
> Q: Okay. What about numerical record keeping?
> A: Yes. That would also be one. Let's see. Also, well when I said staff supervision, administrative would be another one.
> Q: Okay.
> A: which would kind of be in line with that staff supervision.
> Q: The claimant testified a few minutes ago as to her job duties. Are all of the transferable skills that you just indicated she had, things she testified to?
> A: Yes, Your Honor.

[Tr. 2083-84].

was "at most harmless error because the ALJ did not reach step five of the sequential evaluation, the only point in the analysis when transferrable skills become relevant." [Doc. #13-1 at 14 (citing Tr. 720-21)]. As set forth above, this case is in the district court for the second time after being remanded by the Western District of New York, upon stipulation of the parties, in August 2016. [Tr. 792-98]. In her first opinion, the ALJ found plaintiff was not disabled at Step Five of the sequential analysis. [Tr. 29-32]. In the Remand Order, the Appeals Council vacated the 2016 Ruling, "for further proceedings consistent with the order of the court." [Tr. 801]. The Appeals Council also found that

> the record includes a limited description of the
> requirements of the claimant's past relevant work in a
> Work History Report dated June 10, 2010 (Exhibit 6E);
> the claimant did not provide greater details of the
> requirements of her past relevant work at the hearing
> held on February 28, 2014. Therefore, it is unclear
> whether the claimant derived the transferable skills
> identified by the vocational expert (Social Security
> Ruling 82-41).

[Tr. 801].

At the ALJ's hearing in July 2017, plaintiff provided testimony regarding her employment history, the positions she held and the skills and duties of each position in greater detail. [Tr. 2077-81]. Similarly, the VE provided testimony regarding the work performed by plaintiff in the 15 years prior to her date last insured, the positions of dietary aide, kitchen

supervisor and dietary manager and their counterparts in the DOT, and identified transferable skills acquired from these jobs. [Tr. 2082-88]. In her second opinion in November 2017, ALJ Zahm found at Step Four that plaintiff was capable of performing past relevant work as a dietary manager and, pursuant to the regulations, was not required to reach Step Five or the issue of transferrable skills. [Tr. 720-21]. See 20 C.F.R. §404.1520(a)(4)("The sequential evaluation process is a series of five "steps" that we follow in a set order ... If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Transferrable skills only become an issue for consideration when the ALJ reaches Step Five of the sequential evaluation process. See 20 C.F.R. §§404.1520(a)(4)(v); 404.1560(c). Indeed, the ALJ acknowledged as much in her decision stating, "as explained below, the additional vocational expert evidence obtained pursuant to the Appeals Council's directive eliminated the need to consider any transferable skills the claimant may have acquired from her past relevant work, while also supporting the conclusion that the claimant remained able to perform past relevant work." [Tr. 708]. Here, the ALJ made a determination at Step Four of the sequential evaluation, finding that plaintiff could perform her past relevant work as a Dietary Manager. [Tr. 720-21]. The issue the

Appeals Council identified with the 2014 decision, a lack of evidence supporting the decision at Step Five of the sequential evaluation, was addressed by taking additional testimony at the 2017 hearing from plaintiff and the VE and the finding at Step Four of the sequential evaluation.

Accordingly, any error in not specifically addressing the issue of transferable job skills, as set forth in the Appeals Council's Remand Order, is at most harmless error. See Ortiz v. Colvin, 298 F. Supp. 3d 581, 590 (W.D.N.Y. 2018)("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration.")(quoting Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010)(alterations omitted)); Camarata v. Colvin, No. 6:14-CV-0578 (MAD/ATB), 2015 WL 4598811, at *16 (N.D.N.Y. July 29, 2015) (denying the request for remand because application of the correct legal standard would not change the outcome); Ryan v. Astrue, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009)(finding harmless error where the ALJ improperly discounted the treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose).

Accordingly, the Court finds that the ALJ did not err in failing to follow the Appeals Council's Remand Order.

**C.  The ALJ Properly Determined the Plaintiff's Credibility**

Last, plaintiff argues that the ALJ "did not even consider whether Ms. Duncan has an underlying medical condition that could reasonably be expected to produce the pain she alleged." [Doc. #11-1 at 27 (citing Tr. 707-22)]. She contends that "the ALJ not only failed to properly apply the Second Circuit pain standard, but she misstated the evidence in finding that Ms. Duncan is not entirely credible." Id. at 30.

The ALJ is required to assess the credibility of the plaintiff's subjective complaints. See generally 20 C.F.R. §404.1529. The courts of the Second Circuit prescribe a two-step process. First, the ALJ must determine whether the record demonstrates that the plaintiff possesses a medically determinable impairment that could reasonably produce the alleged symptoms, such as pain. 20 C.F.R. §404.1529(b). "That requirement stems from the fact that subjective assertions of pain alone cannot ground a finding of disability. If the claimant does suffer from such an impairment, at the second step the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010)(emphasis in original)(citing 20 C.F.R. § 404.1529(a)). To do this, the ALJ

must determine if objective evidence alone supports the plaintiff's complaints; if not, the ALJ must consider other factors laid out at 20 C.F.R. §404.1529(c). See Skillman v. Astrue, No. 08CV6481, 2010 WL 2541279, at *6 (W.D.N.Y. June 18, 2010). These factors include: "(1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) any precipitating or aggravating factors; and (4) the type, dosage, effectiveness, and side effects of any medication taken by claimant to alleviate the pain." Id. (citations omitted); 20 C.F.R. §404.1529(c)(3)(v)(vii). The ALJ must consider all the evidence in the case record. SSR 16-3P, 2016 WL 1119029, at *2 (S.S.A. March 16, 2016). Furthermore, the "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the how the adjudicator evaluated the individual's symptoms. Id. at *9. "Put another way, an ALJ must assess subjective evidence in light of objective medical facts and diagnoses." Williams, 859 F.2d at 261.

After summarizing plaintiff's testimony, the ALJ made the following statement regarding plaintiff's credibility:

The claimant's complaints of pain and limitations are out of proportion to the nature and extent of treatment she has sought and received, the objective evidence, and the reports of most of the treating and examining sources for the period close to her date last insured of December 2011.

Treatment notes show that the claimant's condition improved with physical therapy. The record also reflects that the claimant had far more functional ability than she testified to at the hearing. For instance, she stated that she can only walk for five minutes at a time since 2006. The treatment notes of the primary care physician show that she was walking around an amusement park in 2008. Also, she reported to a doctor that she has "discomfort with any lengthy walking, sitting, or standing." Five minutes of walking, ten minutes of standing, and 15 minutes of sitting (as she testified were her limitations from the alleged onset date to her date last insured) are not lengthy. MRI results show mild findings. The claimant has not had significant treatment for her back, only physical therapy, medications, and chiropractic treatment. Her reason for refusing injections for pain control is not persuasive if the pain she experiences restricts her to the extent she claimed

[Tr. 718-19]. The ALJ conducted a detailed analysis of the objective and other medical evidence of record supporting this finding. [Tr. 712-20].

Plaintiff contends that the ALJ's findings are not based on substantial evidence. [Doc. #11-1 at 28-30]. The ALJ's decision reflects that she did in fact consider plaintiff's allegations of pain, their consistency or inconsistency with the objective medical evidence, improvement with conservative treatment, mild diagnostic imaging findings, the medical opinions and how such complaints of pain generally did not result in functional

limitations that would preclude work. <u>See</u> Tr. 712-20.

Although "the subjective element of pain is an important factor to be considered in determining disability," <u>Mimms v. Heckler</u>, 750 F.2d 180, 185 (2d Cir. 1984) (citation omitted), an ALJ is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." <u>Rivers v. Astrue</u>, 280 F. App'x 20, 22 (2d Cir. 2008). Indeed, "[t]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979); <u>Snell</u>, 177 F.3d 128, 135 (2d Cir. 1999). This is precisely the evaluation performed by the ALJ here. Accordingly, the Court finds no error.

Moreover, the ALJ had the opportunity to personally observe plaintiff and her testimony, something the Court cannot do. Accordingly, the Court finds no error in the ALJ's assessment of plaintiff's credibility.

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's capabilities; it is to review the ALJ's decision for any reversible error. "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence

supports the ALJ's decision." Bonet, 523 F. App'x at 59 (citations omitted). For the reasons stated, the Court finds no error in the ALJ's assessment of plaintiff's credibility, which is supported by substantial evidence of record.

## VI.   CONCLUSION

For the reasons stated, plaintiff's Motion for Judgment on the Pleadings **[Doc. #11]** is **DENIED.** Defendant's Motion for Judgment on the Pleadings **[Doc. #13]** is **GRANTED.**

The plaintiff's complaint [Doc. #1] is **DISMISSED with prejudice.** The Clerk of the Court is directed to enter judgment and close the case.

This is not a Recommended Ruling.  The parties consented to proceed before a United States Magistrate Judge with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c). [Doc. #7 Standing Order In re: Social Security Cases dated June 13, 2018].[7]

SO ORDERED at Bridgeport, Connecticut this 4th day of May 2019.

                              ___/s/_____
                              HOLLY B. FITZSIMMONS
                              UNITED STATES MAGISTRATE JUDGE

---

[7] The case was assigned to the undersigned on March 21, 2019. [Doc. #15].